**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF MISSOURI**
**WESTERN DIVISION**

| | | |
|---|---|---|
| ROBERT RAVENCAMP, on behalf of himself and all others similarly situated, | ) ) ) | |
| Plaintiff, | ) ) | |
| vs. | ) ) | Case No. 18 CV 107-BP |
| MENARD, INC., | ) ) | |
| Defendant. | ) | |

**DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT PURSUANT TO**
**FED. R. CIV. P. 9(b) AND 12(b)(6) AND SUPPORTING SUGGESTIONS**

Bryant T. Lamer
Thomas Hiatt
SPENCER FANE LLP
1000 Walnut Street, Suite 1400
Kansas City, Missouri 64106
Tel.     (816) 474-8100
Fax     (816) 474-3216
blamer@spencerfane.com
thiatt@spencerfane.com

Brian P. Norton
Andrew C. Nordahl
FREEBORN & PETERS LLP
311 South Wacker Dr., Suite 3000
Chicago, Illinois 60606
Tel.     (312) 360-6000
FAX    (312) 360-6520
bnorton@freeborn.com
 anordahl@freeborn.com

# TABLE OF CONTENTS

**Page**

I.      INTRODUCTION ................................................................................................. 1

II.     FACTS ................................................................................................................ 2

     A.      Menards' Printed Flyers Expressly State that the 11% Rebate is a Mail-In Rebate in the Form of a Merchandise Credit Check ............................................. 5

     B.      Menards' In-Store Signage Makes Clear that the 11% Rebate is a Mail-In Rebate ......................................................................................................... 7

     C.      Menards' Rebate Receipts, Forms, and Instructions Also Disclose the Terms of the 11% Rebate Sale ............................................................................. 8

III.    ARGUMENT ...................................................................................................... 12

     A.      The Court Should Dismiss Ravencamp's Claim Because He Has Not Complied With Rule 9(b) ................................................................................. 12

     B.      In the Alternative, The Court Should Dismiss Ravencamp's Claim Pursuant to Rule 12(b)(6) .................................................................................. 16

# TABLE OF AUTHORITIES

Page(s)

CASES

*Ashanti v. City of Golden Valley*,
666 F.3d 1148 (8th Cir. 2012) ............................................... 4

*Ashcroft v. Iqbal*,
556 U.S. 662, 129 S.Ct. 1937 (2009) ..................................... 16

*Baryo v. Philip Morris USA, Inc.*,
435 F. Supp. 2d 961 (W.D. Mo. 2006) .................................. 13

*Bell Atlantic Corp. v. Twombly*,
550 U.S. 544 (2007) ........................................................... 16

*Brownmark Films, LLC v. Comedy Partners*,
682 F.3d 687 (7th Cir. 2012) ................................................ 4

*Chochorowski v. Home Depot U.S.A., Inc.*
295 S.W.3d 194 (Mo. Ct. App. 2009) .................................... 12

*Commercial Prop. Inv. v. Quality Inns Int'l, Inc.*,
61 F.3d 639 (8th Cir. 1995) ............................................... 13

*Courchene v. Citibank, N.A.*,
No. 06–4026–CV–C–NKL, 2006 WL 2192110 (W.D. Mo. Aug. 1, 2006) ........................... 12

*Enervations, Inc. v. Minn. Mining & Mfg. Co.*,
380 F.3d 1066 (8th Cir. 2004) .............................................. 4

*Great Plains Trust Co. v. Union Pac. R.R. Co.*,
492 F.3d 986 (8th Cir. 2007) ............................................. 13

*Hess v. Chase Manhattan Bank, USA, N.A.*,
220 S.W.3d 758 (Mo. 2007) (*en banc*) ................................ 12

*Hughes v. 3M Retiree Med. Plan*,
281 F.3d 786 (8th Cir. 2002) ............................................... 4

*Khaliki v. Helzberg Diamond Shops, Inc.*,
2011 WL 1326660 (W.D. Mo. Apr. 6, 2011) ........................... 12

*Kushner v. Beverly Enters., Inc.*,
317 F.3d 820 (8th Cir. 2003) ............................................... 4

*Lavender v. Wolpoff & Abramson, L.L.P.*,
    No. 07–0015–CV–W–FJG, 2007 WL 2507752 (W.D. Mo. Aug. 30, 2007)..........................12

*Martin v. Wm. Wrigley Jr. Co.*,
    2017 WL 4797530 (W.D. Mo. Oct. 24, 2017).........................................................................16

*Miller v. Redwood Toxicology Lab, Inc.*,
    688 F.3d 928 (8th Cir. 2012) ...............................................................................................4

*Owen v. Gen. Motors Corp.*,
    533 F.3d 913 (2008).............................................................................................................15

*Ravencamp, et al. v. CVS*
    No. 1616-CV07116 (Jackson County Cir. Ct. at Independence, Mo.) ....................................15

*Ravencamp, et al. v. Lenovo*
    No. 15-CV-1206 (Northern District of California) .................................................................15

*Rawa, et al. v. Monsanto*
    No. 17-CV-1252 (Eastern District of Missouri) ....................................................................15

*United States ex rel. Costner v. URS Consultants, Inc.*,
    317 F.3d 883 (8th Cir. 2003) ..............................................................................................13

*United States ex rel. Joshi v. St. Luke's Hosp., Inc.*,
    441 F.3d 552 (8th Cir. 2006) ..............................................................................................13

*Wright v. Bath & Body Works Direct, Inc.*,
    2012 WL 12951921 (W.D. Mo. July 7, 2012)..................................................................12, 13

*Zean v. Fairview Health Services*,
    858 F.3d 520 (8th Cir. 2017) ................................................................................................4

## STATUTES

Missouri Merchandising Practices Act, § 407.010 *et seq*. (the "MMPA")..........1, 3, 11, 12, 15, 16

N.Y. GEN. BUS. LAW § 391-Q (MCKINNEY 2011) ..............................................................18

## OTHER AUTHORITIES

Fed. R. Civ. P. 9(b) ......................................................................................1, 12, 13, 16, 18

Fed R. Civ. P. 12(b)(6)...................................................................................1, 2, 4, 12, 16

# I.     INTRODUCTION

Robert Ravencamp ("Ravencamp") brings a single count complaint against Menard, Inc. ("Menards"), alleging that it violated the Mo. Rev. Stat. § 407.010.1 of the Missouri Merchandising Practices Act (the "MMPA"), by purportedly misrepresenting the terms of its 11% rebate sales. Despite disclosures that the 11% rebates were mail-in rebates in the form of merchandise credit checks, Ravencamp contends that Menards falsely represented that its 11% rebate was a discount off the sale price at the time of purchase or a cash reimbursement afterwards. The Court should dismiss Ravencamp's complaint because (1) he has not stated with particularity the circumstances constituting misrepresentation, as required by Fed. R. Civ. P. 9(b), and, in the alternative, (2) Ravencamp has failed to state a cause of action under Fed R. Civ. P. 12(b)(6), based on the documents that he references but conspicuously fails to attach to his complaint.

It is settled law that Rule 9(b) applies to claims of misrepresentation under the MMPA, and requires a plaintiff to allege the details of the fraudulent conduct – the who, what, when, where, why and how. *See infra* at 12-16. Ravencamp's complaint, however, consists of little more than conclusory allegations and snippets of a random advertisement taken out of context. All that Menards can glean from his complaint is that he bought something from a Menards' store in Independence, Missouri, at some price, sometime in 2017. Missing from his complaint are, among other things, any details about what product he bought, when precisely he bought it, how much he paid, why and how he has been injured, what advertisement supposedly caused his loss, and when and how he learned that Menards' 11% rebate sale was a mail-in rebate in the form of a merchandise credit check. Ravencamp has not satisfied Rule 9(b)'s heightened pleading requirements.

In the alternative, the documents that Ravencamp references and embraces in his complaint, but nevertheless fails to attach to it, demonstrate that he has no claim as a matter of law under Rule 12(b)(6). Indeed, while Ravencamp readily offers the legal conclusion that Menards' advertisements are false and misleading – based on snippets from a Menards' flyer taken out of context and characterizations of its signage and rebate forms – he assiduously avoids attaching actual copies of any of these documents. Under the incorporation by reference doctrine, however, such documents are part of his complaint for purposes of Rule 12(b)(6). *See infra* at 3-5. Further, a review of these documents reveals why Ravencamp left them out; they demonstrate that Menards fully disclosed that its 11% rebate was a mail-in rebate in the form of a merchandise credit check, not a discount off the purchase price.

For these reasons and those set forth below, the Court should dismiss Ravencamp's complaint.

## II.     FACTS

Menards is a private, family-owned Wisconsin corporation, operating approximately 300 home improvement stores primarily in the Midwest, including Missouri. Doc. 1, Compl. at ¶¶ 6, 7, 11. Menards is regarded in the home improvement industry as the low price leader, and takes great pride in its famous slogan Save BIG Money®! *Id*. at ¶¶ 10-11. Menard customers are able to do so, not only through Menards everyday low prices, but also through regular sales and promotions.

Among Menards' most popular promotions are its rebate sales – including its 11% rebate sale – which it has held regularly for years. *Id*. at ¶¶ 10-11. As set forth in Menards' printed weekly ads/flyers, on-line advertisements, in-store signage, rebate receipts, and instructions, through this promotion participating customers can obtain an 11% mail-in rebate, on virtually all purchases made during an 11% sale, in the form of a merchandise credit check on future

purchases from Menards.  *See infra* at 5-11.  The Federal Trade Commission page on "Rebates," which Ravencamp references in his complaint (Doc. 1, Compl. at ¶ 12), explains that this is the typical way that rebates operate:  "most rebates are of the mail-in variety" and "require consumers to pay the full cost of an item at the time of purchase, then to send documentation to the manufacturer or retailer to receive a rebate by mail."  *See infra* at 17.  Indeed, because of the frequency of Menards' 11% rebate sales and the full and complete disclosure of all terms and conditions, the customer redemption rate for all 11% rebate sales over the past five years is approximately 68.2%, across all stores.  *See* Doc.1, Menards' Notice of Removal at ¶ 2.

Nonetheless, Ravencamp claims that Menards' printed flyers, in-store signage, rebate instructions, and rebate receipts falsely represent that the 11% rebate sale is an 11% discount off the sale price at the time of purchase or a cash reimbursement thereafter.  *See* Doc 1, Compl. at ¶¶ 15-22.  This said, Ravencamp does not allege what product he purchased, when precisely he purchased it, how much he paid, what advertisement supposedly caused his loss, and why and how he has been injured.

In addition, in making this claim, Ravencamp repeatedly makes reference to the content of Menards' printed flyers, in-store advertisements and rebate forms and receipts (*id*., at ¶¶ 15-21), yet fails to attach copies of any of them to his complaint.  Instead, he simply characterizes their content (*id*. at ¶¶ 19-20), or cherry-picks select portions of advertisements he plainly possesses (*id*. at ¶ 15), and, based on these out-of-context snippets, concludes that Menards has violated the MMPA.

Under the incorporation-by-reference doctrine, however, a court may consider, in deciding a Rule 12 motion, any documents "necessarily embraced by the pleadings," including those "documents whose contents are alleged in a complaint and whose authenticity no party

questions, but which are not physically attached to the pleading." *Ashanti v. City of Golden Valley*, 666 F.3d 1148, 1151 (8th Cir. 2012); *Enervations, Inc. v. Minn. Mining & Mfg. Co.,* 380 F.3d 1066, 1069 (8th Cir. 2004); *Kushner v. Beverly Enters., Inc.,* 317 F.3d 820, 831 (8th Cir. 2003); *Hughes v. 3M Retiree Med. Plan,* 281 F.3d 786, 790 (8th Cir. 2002).[1] Thus, "if a plaintiff mentions a document in his complaint, the defendant may then submit the document to the court without converting defendant's 12(b)(6) motion to a motion for summary judgment. The doctrine prevents a plaintiff from 'evad[ing] dismissal under Rule 12(b)(6) simply by failing to attach to his complaint a document that prove[s] his claim has no merit.'" *Brownmark Films, LLC v. Comedy Partners,* 682 F.3d 687, 690 (7th Cir. 2012); *see also Zean v. Fairview Health Services*, 858 F.3d 520, 526-27 (8th Cir. 2017) (holding that the district court properly considered documents embraced by plaintiff's complaint even though they refuted plaintiff's claims.)

With this doctrine in mind, Menards submits herewith true and correct copies of the documents that Ravencamp references and characterizes in his allegations, but fails to attach to his complaint, including (1) the relevant weekly printed flyer (a true and accurate copy of which is attached electronically as Exhibit B as well as submitted in its original form to both the Court and opposing counsel), (2) the in-store signage from Menards' Independence store (a true and accurate copy of which is attached Exhibit C), and (3) a rebate receipt and rebate form and instructions (true and accurate copies of which is attached as Exhibit D). *See* Declaration of Michael Every at ¶¶ 2-4 (a copy of which is attached Exhibit A). Viewed in context, these documents demonstrate that Menards disclosed that its 11% rebate sale was a mail-in rebate in

---

[1] In particular, "courts additionally consider 'matters incorporated by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint whose authenticity is unquestioned.'" *Miller v. Redwood Toxicology Lab, Inc.*, 688 F.3d 928, 931 n.3 (8th Cir. 2012) (*quoting* 5B Wright & Miller, Federal Practice & Procedure § 1357 (3d ed. 2004)).

the form of a merchandise credit check, and never represented that customers would receive an 11% discount off the sale price at the time of purchase or a cash reimbursement thereafter.

### A. Menards' Printed Flyers Expressly State that the 11% Rebate is a Mail-In Rebate in the Form of a Merchandise Credit Check.

In his complaint, Ravencamp lifts three random[2] examples of product advertisements from a printed Menards' flyer for the 11% rebate sale that ran during the period June 18-24, 2017 (the "June 18th flyer"). *Compare* Doc. 1, Compl. at ¶ 15 *with* Ex. B. at pp. 3, 6-7.)  Viewed in isolation, he contends that these advertisements, such as the following, falsely represent that the final price will include an 11% discount off the sale price at the time of purchase:



Viewed in context of the entire advertisement, however, this is one of 172 products advertised in the June 18th flyer, each of which says "**11% REBATE***," not 11% DISCOUNT. *See* Ex. B.  Moreover, each advertised product has another feature in common:  every reference to the "**11% REBATE***" is followed by an asterisk.  *Id.*  This asterisk appears in excess of 180 times in the June 18th flyer and, in each instance, refers to the terms of the 11% rebate sale.

---

[2] These advertisements are random in that Ravencamp does not allege that he purchased any of these three items from Menards or that he purchased any other items from Menards during the 11% rebate sale held from June 18-24, 2017.

These terms are displayed and set off at the bottom of both the first and last pages of the June 18th flyer. (*Id.*) They disclose that the **11% REBATE\*** is a mail-in rebate in the form of a merchandise credit check valid in-store only, not a discount off the sale price at the time of purchase:



Mail-in-Rebate. Rebate is in form of merchandise credit check, valid in-store only. Merchandise credit check is not valid towards purchases made on MENARDS.COM®. Limited to stock on hand. No sorry slips. First come, first served. Future sale price adjustments, exchanges and merchandise returns will void the 11% rebate on the items adjusted, exchanged and/or returned. Rebate is valid on special ordered products but does not extend to the special ordering of any normally stocked items. Not good with any other coupons or offers except Menards® coupons, Menards rebates and manufacturers' coupons. Multiple receipts may accompany one rebate certificate. Menards reserves the right to limit purchases of any and all items to reasonable job lot quantities.

**Excludes event tickets, gift cards, propane purchases, delivery and handling charges, all rental items, minuteKEY®, processing fees, packaging charges and extended service agreements**.

Read in context, the June 18th flyer conveys that the final price for the advertised items is the price *after* the mail-in rebate, in the form of an in-store credit. Ravencamp concedes that the terms are disclosed in the weekly flyers, but asserts that they are "buried in the barely legible fine print" and the "overall format and presentation of the print advertisement is designed to trick consumers" into believing that they will get a discount off the sale price at the checkout counter. Doc. 1, Compl. at ¶ 19.) This, of course, is not a fact but a legal conclusion that is hardly persuasive when Ravencamp fails to attach the actual print advertisement, a review of which is the only way the Court can determine its "overall format and presentation." So that there can be no debate about that format or the size of the print, a paper original of the June 18th flyer has been submitted to the Court as Exhibit B.

**B.      Menards' In-Store Signage Makes Clear that the 11% Rebate is a Mail-In Rebate.**

Next, Ravencamp contends that "Menards' in-store signage is also deceiving and misleading because it represents that consumers can receive an '11% rebate on everything' or '11% off everything,' but does not disclose that the 'rebate' comes in the form of a store credit for future purchases of other products." Doc. 1, Compl. at ¶19. Again, however, while referring to and purportedly quoting from Menards' signage, he does not attach any photos or copies of such signage. Under the incorporation by reference doctrine, Menards submits herewith true and correct photos of the signage displayed during 11% rebate sales at the store located in Independence Mo. (*see* Ex. C), where Ravencamp alleges he purchased something from Menards in 2017. *Id.* at ¶ 6.

As demonstrated by the banner reproduced below, Menards' signage, like its print advertisement, disclosed that the 11% rebate was a "Mail-In Rebate":



In addition, none of the signs, contrary to Ravencamp's allegation, simply state "11% Off Everything," with no further explanation. *Id.* at ¶ 19. Rather, each sign has an asterisk after "11% Off Everything*" that directed customers to "*See Flyer For Details." If, as directed, Ravencamp had picked up the flyer, he would have seen, as discussed above, that *every* mention of the "11% REBATE*" is followed by an asterisk which refers to the terms of the 11% rebate sale set forth at the bottom of both the front and back pages of the flyer. (*See supra* at 5-7.) Those terms made clear that the 11% rebate was a mail-in rebate in the form of a merchandise credit check. (*Id.*)

**C.** **Menards' Rebate Receipts, Forms, and Instructions Also Disclose the Terms of the 11% Rebate Sale.**

Finally, based on Ravencamp's characterization of Menards' rebate receipts, instructions and forms, he offers the legal conclusion that "[t]he process to receive the store credit rebate is

unjustifiably complex and confusing to the consumer." Doc. 1, Compl. at ¶ 20. While purporting to allege the content of these documents, Ravencamp once again fails to attach any of them to his complaint. A review of actual rebate receipts, instructions and forms (*see* Ex. D), however, demonstrates that the process was simple and straightforward, which explains why Menards has a redemption rate in excess of 68%.

As Ravencamp alleges, to obtain the 11% rebate, a customer need only mail in to Menards his/her rebate receipt along with a rebate form. Doc. 1, Compl. at ¶ 20.) As indicated, during the 11% rebate sale, a rebate receipt is printed along with a customer's sales receipt. *Id*. Since Ravencamp has not attached his sales or rebate receipts, despite referencing them, attached hereto as part of Ex. D, is a true and correct copy of a rebate receipt that was printed during the 11% rebate sale held from August 20-26, 2017. The rebate receipt (1) sets forth the amount of the 11% rebate; (2) identifies the date by which the customer must mail it in to obtain the rebate; and (3) states that "[t]o obtain rebate form, pickup at Rebate Center in store, or go to www.menards.com and download as needed":



MENARDS - MADISON WEST

# Rebate #1417 Receipt

11117032102002104448003008008

Offer valid  08-20-17    Thru 08-26-17

Final mailing date 09-16-17

Store: 3058

To obtain rebate form, pickup at Rebate
Center in store, or go to www.menards.com
and download as needed.

11% Rebate Amount             21.32

22707 06 2104    08/21/17  06:39AM 3058

Attached hereto as part of Ex. D is a true and correct copy of the rebate form and instructions used in conjunction with the 11% rebate sale advertised in the June 18th flyer, discussed above.  The rebate form is a single document with two halves, available in Menard stores or on-line.[3]  *See* Ex. D.  One half contains the instructions for filling out and mailing the form and rebate receipt, while the other half, to be folded, separated, and mailed with the rebate receipt, contains boxes for the customer to put in his/her name and address.  The instructions on the reverse side of the rebate form provide, among other things, that (1) the mail-in rebate "is in the form of a merchandise credit check," (2) a "Menards® Merchandise Credit Check [is] valid towards future purchases at any Menards® retail store", (3) the rebate form with rebate receipt

---

[3] The on-line form and instructions can be found at https://www.menards.com/main/rebates/c-13180.htm

must be postmarked by the date specified, and (4) it may take 6-8 weeks to process the form an

rebate receipt. (*Id.*)



# Rebate #0847
## 6/18/17 - 6/24/17*

Menards® Merchandise Credit Check valid towards future purchases at any
Menards® retail store and not valid for purchases on MENARDS.COM®

**MENARDS®**

**Mail rebate certificate and ORIGINAL rebate receipt(s) to:**

# Save 11%
## PO BOX: 155
## Elk Mound, WI 54739-0155

**3 simple steps to receive your rebate:**
1. **Fill out your name and address on this certificate.**
2. **Enclose the original Menards® "Rebate Receipt(s)" and this completed certificate in an envelope.**
3. **Mail the envelope to the address above.**

*Rebate is in form of merchandise credit check. Excludes gift cards, propane purchases, delivery and handling charges, all rental items, minute key purchases, processing fees, packaging charges, and extended service agreements. Limited to stock on hand. No rain checks. First come, first served. Future sale price adjustments, exchanges and merchandise returns will void the 11% rebate on the items adjusted, exchanged and/or returned. Rebate is valid on special ordered products but does not extend to the special ordering of any normally stocked items. Not good with any other coupons or offers except Menards® coupons, Menards® rebates and manufacturers' coupons. Multiple rebate receipts may accompany one rebate certificate. Menards® reserves the right to limit purchases of any and all items to reasonable job lot quantities.*

## Rebate must be postmarked by 7/15/17

**Please note:**
- **A copied receipt will not be accepted.**
- **Allow 6-8 weeks for processing.**
- **Rebates are limited to stock on hand, no rainchecks.**
- **One certificate can be used for multiple rebate receipts.**
- **Arrangements must be made for immediate pick up or delivery.**
- **Check the status of your rebate at www.rebateinternational.com**
- **Please print clearly, we are not responsible for lost or misdirected mail due to lack of print clarity.**

WARNING: Fraudulent submissions can result in federal prosecution for mail fraud under the 18 USC Sections 1341 & 1342. Menards reserves the right to deny rebate claims. Void where prohibited. No need to fold, staple, tape, or paperclip, which delays processing. Contents donot leave envelope until entered for payment.

**N0847N**

Fold Here

## III. ARGUMENT

To establish a claim under the MMPA, Ravencamp must allege that he (1) leased or purchased a product or service; (2) primarily for personal, family, or household purposes; and (3) suffered an ascertainable loss of money or property; (4) as a result of an act declared unlawful by Mo. Rev. Stat. § 407.020. Mo. Rev. Stat. § 407.025; *Hess v. Chase Manhattan Bank, USA, N.A.,* 220 S.W.3d 758, 773 (Mo. 2007) (*en banc*). Among the acts declared unlawful by Mo.Rev.Stat. § 407.020 is the use or employment of "deception, fraud, false pretense, false promise, misrepresentation, unfair practice, concealment, suppression, or omission in connection with the purchase of the product or service at issue." Mo. Rev. Stat. § 407.020.1; *Chochorowski v. Home Depot U.S.A., Inc.* 295 S.W.3d 194, 198 (Mo. Ct. App. 2009). As set forth above, Ravencamp claims that Menards misrepresented its 11% rebate sales in violation of the MMPA. Doc. 1, Compl. at ¶ 34.

The Court should dismiss that claim because (1) Ravencamp has not complied with Rule 9(b), and (2) based on the documents he references but does not attach to his complaint, he fails to state a cause of action under Rule 12(b)(6).

### A. The Court Should Dismiss Ravencamp's Claim Because He Has Not Complied With Rule 9(b).

This Court has repeatedly held that when fraud or misrepresentation is an element of a MMPA claim, Rule 9(b)'s heightened pleading requirements apply. *See, e.g., Wright v. Bath & Body Works Direct, Inc.,* 2012 WL 12951921, at *5-6 (W.D. Mo. July 7, 2012); *Khaliki v. Helzberg Diamond Shops, Inc.,* 2011 WL 1326660, at *2–3 (W.D. Mo. Apr. 6, 2011); *Lavender v. Wolpoff & Abramson, L.L.P.,* No. 07–0015–CV–W–FJG, 2007 WL 2507752, at *2 (W.D. Mo. Aug. 30, 2007); *Courchene v. Citibank, N.A.,* No. 06–4026–CV–C–NKL, 2006 WL 2192110, at

*2 (W.D. Mo. Aug. 1, 2006); *Baryo v. Philip Morris USA, Inc.*, 435 F. Supp. 2d 961, 968 (W.D. Mo. 2006).

Those requirements mandate that a party "state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b). The purpose of this rule is to ensure that the defendant is able to respond specifically and quickly to potentially damaging allegations and prepare a defense to charges of fraud. *United States ex rel. Joshi v. St. Luke's Hosp., Inc.*, 441 F.3d 552, 556 (8th Cir. 2006); *United States ex rel. Costner v. URS Consultants, Inc.*, 317 F.3d 883, 888 (8th Cir. 2003); *Baryo*, 435 F. Supp. 2d at 968; *Wright*, 2012 WL 12951921, at *5-6. As a result, "conclusory allegations that a defendant's conduct was fraudulent and deceptive are not sufficient to satisfy the rule." *Baryo*, 435 F. Supp. 2d at 968; *Wright*, 2012 WL 12951921, at *5-6.

Rather, plaintiff "should include facts such as the time, place and contents of the false representations and details of the fraudulent acts, including when the acts occurred and who engaged in them." *U.S. ex rel. Joshi*, 441 F.3d at 556; *Baryo*, 435 F. Supp. 2d at 968, *Wright*, 2012 WL 12951921, at *5-6. Put simply, plaintiff's allegations should include the "who, what, when, where, why and how" concerning the wrongful conduct. *Great Plains Trust Co. v. Union Pac. R.R. Co.*, 492 F.3d 986, 995 (8th Cir. 2007); *Commercial Prop. Inv. v. Quality Inns Int'l, Inc.*, 61 F.3d 639, 644 (8th Cir. 1995).

Ravencamp's complaint fails to satisfy Rule 9(b)'s heightened pleading requirements. Instead, it consists of the same sort of general and conclusory allegations of fraud and deception that the courts rejected in *Khaliki, Baryo* and *Wright*. All Menards knows from Ravencamp's allegations is that he bought something from its store in Independence, Missouri, at some price, sometime during 2017. Details missing from his complaint include:

1.      what product(s) he bought;

2.         how much he paid for the product(s);

3.         when precisely he bought such product(s);

4.         whether he obtained a rebate receipt when he made his purchase;

5.         what advertisement supposedly caused his loss;

6.         how he learned about the 11% rebate sale;

7.         when and how he learned that the 11% rebate sale was a mail-in rebate in the form of a merchandise credit;

8.         why and how he was injured; and

9.         whether he mailed in the rebate receipt and form to obtain his merchandise credit check.

Menards is hardly in a position to respond to Ravencamp's claims of misrepresentation without knowing these basic details. Perhaps the 11% rebate sale did not cover what Ravencamp purchased. Maybe he did not make the purchase during an 11% rebate sale. Possibly he was not deceived at all, but fully understood the terms of the sale and mailed in the rebate form with his rebate receipt.[4] Menards can only speculate on such matters because Ravencamp fails to state with particularity the circumstances of the alleged fraud.

The same is true with regard to the content of Menards' allegedly false representations. As for Menards' television, radio and internet advertisements, and its in-store signage for the 11% rebate sales, Ravencamp's allegations consist of nothing more than conclusory allegations that such advertisements were false and deceptive. Doc. 1, Compl. at ¶¶ 1, 7, 11, 19, 22. He

---

[4] In addition, depending upon when in 2017 Ravencamp made his purchase from Menards, he may be bound by the terms and conditions of the 11% rebate sale which, starting no later than December 20, 2017, included that "Purchaser agrees that any and all controversies or claims arising out of or relating to Menards® Rebate Program(s), or in the breach thereof, must be submitted to binding arbitration administered by the American Arbitration Association (AAA) under its applicable Consumer or Commercial Arbitration Rules." *See* http://www.rebateinternational.com/ RebateInternational/termsAndConditions.do

attaches no copies, screenshots or transcripts of these advertisements and provides no specific

content. Moreover, the only examples of allegedly false advertising that Ravencamp points to

are from a Menards' printed flyer. *Id*. at ¶ 19. But, even in this instance, he does not provide the

complete content, as demonstrated above. Instead, he cherry picks select portions from a flyer

and leaves out the terms of the 11% rebate sale referenced in each of his examples. *See supra* at

5-6. Nor does he allege that this flyer caused his loss or even that he purchased products from

Menards for the sale period covered by this flyer – June 18-24, 2017.

Indeed, while "the plain language of the MMPA demands a causal connection between

the ascertainable loss and the unfair or deceptive merchandising practice," (*Owen v. Gen. Motors*

*Corp*., 533 F.3d 913, 922 (2008)), such causal connection is missing from Ravencamp's

complaint. It is especially important in this case where the public record demonstrates that

Ravencamp is or was a named plaintiff in the following three class actions, all brought under the

MMPA within the last three years:

- *Ravencamp, et al. v. Lenovo* – No. 15-CV-1206 (Northern District of California), filed March 13, 2015 (Shank & Hamilton, P.C.) (alleging that Lenovo engaged in deceptive practices by installing, and purportedly concealing the installation of, adware on a laptop Ravencamp purchased);

- *Ravencamp, et al. v. CVS* – No. 1616-CV07116 (Jackson County Circuit Court at Independence, Missouri), filed March 23, 2016 (Shank & Moore, LLC) (alleging CVS purportedly misrepresented the effectiveness of its brand flu relief medicine that Ravencamp purchased); and,

- *Rawa, et al. v. Monsanto* – No. 17-CV-1252 (Eastern District of Missouri), filed April 5, 2017 (alleging that Monsanto overstated the number of gallons of weed killer spray solution that would result from the concentrate that Ravencamp had purchased).

Either Ravencamp is the most deceived man in Missouri or perhaps he fully understood

the terms of Menards' 11% rebate sale when he allegedly purchased something from the

Menards in Independence sometime in 2017. Menards cannot respond specifically to

Ravencamp's damaging allegations and prepare a defense to charges of misrepresentation, however, without knowing the details required under Rule 9(b).

**B.    In the Alternative, The Court Should Dismiss Ravencamp's Claim Pursuant to Rule 12(b)(6).**

To survive a motion to dismiss under Rule 12(b)(6), a complaint must contain more than "labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  A complaint must allege facts sufficient to make the claim of unlawful conduct "plausible".  *Id*. at 555-56.  In making that determination, factual conclusions are not sufficient.  *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 1950 (2009) ("[A] court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth."). Nor are legal conclusions sufficient to make the determination.  *Id*.  ("While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations."). Instead, only "well-pleaded factual allegations" may be credited in determining whether a complaint "plausibly give[s] rise to an entitlement to relief."  *Id*.  "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]'–'that the pleader is entitled to relief.'"  *Id., citing* Fed. R. Civ. P. 8(a)(2).  In *Martin v. Wm. Wrigley Jr. Co*., 2017 WL 4797530, at *5 (W.D. Mo. Oct. 24, 2017), the court applied this standard to a claim under the MMPA.

In this case, when the Court, pursuant to the incorporation by reference doctrine (*see supra* at 3-5), views in context and in their entirety the documents that Ravencamp references and embraces, but fails to attach to his complaint, it does not plausibly give rise to a claim for

relief.  In its flyer, in-store signage, rebate receipts and rebate forms, Menards disclosed the terms of its 11% rebate sale, including that:

- the rebate is a mail-in rebate (*see* Exs. B, C, D);

- the rebate is in the form of a merchandise credit check from Menards to be used on subsequent purchases (*see* Exs. B, D);

- it will take six to eight weeks to process the rebate form (*see* Ex. D); and

- customers must follow a few simple instructions to obtain the rebate (*see* Ex. D).

Contrary to Ravencamp's legal conclusions, nowhere does Menards represent in any of these advertisements that the customer will receive an 11% cash rebate at the time of purchase. Even the FTC page on "Rebates" from January 2000 that Ravencamp references but again fails to attach to his complaint, points out that most rebates are of the mail-in variety:

> Some manufacturers and retailers entice shoppers with instant cash rebates that can be redeemed immediately at the checkout counter.
>
> But most rebates are of the mail-in variety. They require consumers to pay the full cost of an item at the time purchase, then to send documentation to the manufacturer or retailer to receive a rebate by mail.

(*See* Ex. E.)

Ravencamp's argument confuses rebates and discounts.  Discounts are immediate reductions in price offered to consumers at the time of purchase. http://www.businessdictionary.com/definition/sales-discount.html.  A rebate, on the other hand, is a delayed incentive that requires consumers to make a purchase at the sale price, submit a request for a rebate amount, and wait for some period to obtain the rebate, whether in the form of cash or credit.  The following statutory definition from New York is instructive:

. . . the term 'rebate' shall mean an offer to provide cash, credit, or credit towards future purchases, that is offered to consumers who acquire or purchase a specified product or service and that is conditioned upon the customer submitting a request for redemption after satisfying the terms and conditions of the offer. The term shall not include any discount from the purchase price that is taken at the time of purchase, any discount, cash, credit, or credit towards a future purchase that is automatically provided to a consumer without the need to submit a request for redemption, or any refund that may be given to a consumer in accordance with a company's return, guarantee, adjustment, or warranty policies, or any company's frequent shopper customer reward program.

N.Y. Gen. Bus. Law § 391-q (McKinney 2011).

Ravencamp does not dispute that Menards can set the terms of its 11% rebate sales as it sees fit. In fact, Menards does not have to offer any rebates at all. And, in this case, Menards does not use the term "11% DISCOUNT" in any of the product advertisements to which Ravencamp objects. Each one says "11% REBATE*," which means that a consumer will not get a price reduction at the time of purchase, but will have to submit a request for redemption afterwards. Moreover, contrary to Ravencamp's allegations, Menards' print advertisements each reference the terms of the 11% rebate sale – set out on the front and back of the June 18th flyer – which read in context disclose that the "final price" is the price after the mail-in rebate in the form of a merchandise credit check from Menards.

Thus, based on his own complaint – which incorporate Menards' flyer, in-store signage, rebate receipts and rebate forms – Ravencamp has failed to allege any misrepresentation or deception. These documents fully disclosed the terms of Menards 11% rebate sale.

## CONCLUSION

For the forgoing reasons, Menards respectfully requests that the Court dismiss Ravencamp's complaint pursuant to Federal Rules of Civil Procedure 9(b) and/or 12(b)(6).

Dated this 15th day of February, 2018

Respectfully submitted,

SPENCER FANE LLP

By: /s/ Thomas Hiatt
     Bryant T. Lamer,     Mo. 57355
     Thomas Hiatt,      Mo. 68134
     1000 Walnut Street, Suite 1400
     Kansas City, Missouri 64106
     Tel.    (816) 474-8100
     Fax    (816) 474-3216
     blamer@spencerfane.com
     thiatt@spencerfane.com

     FREEBORN & PETERS LLP

     Brian P. Norton,
     *Pro Hac Vice Application Pending*
     Andrew C. Nordahl
     *Pro Hac Vice Application Pending*
     311 South Wacker Dr., Suite 3000
     Chicago, Ill. 60606
     Tel.    (312) 360-6000
     FAX   (312) 360-6520
     bnorton@freeborn.com
     anordahl@freeborn.com

     *Attorneys for Defendant Menard, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing document was filed electronically with the United States District Court for the Western District of Missouri, this 15th day of February, 2018, which will automatically transmit a copy to all those entitled to receive notice.

/s/ Thomas Hiatt
*Attorney for Defendant*