**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF MISSOURI**
**WESTERN DIVISION**

| | |
|---|---|
| **ROBERT RAVENCAMP, on behalf of himself and all others similarly situated,** | |
| **Plaintiff,** | |
| **v.** | **Case No. 4:18-CV-00107-BP** |
| **MENARD, INC.,** | |
| **Defendant.** | |

### PLAINTIFF'S SUGGESTIONS IN OPPOSITION
### TO DEFENDANT'S MOTION TO DISMISS

Plaintiff Robert Ravencamp ("Plaintiff") submits the following suggestions in opposition to the Motion to Dismiss (Doc. #5) filed by Defendant Menard, Inc. ("Menards") on February 15, 2018.

# TABLE OF CONTENTS

**Page**

Table of Authorities ........................................................................................................... ii

Introduction ......................................................................................................................... 1

Argument and Authorities .................................................................................................. 2

    I.    The Complaint Satisfies the Particularity Requirement of Rule 9(b) .......................... 2

        A.    Plaintiff has Sufficiently Alleged the Who, What, Where, When and How of Menards' Alleged Misconduct Under the MMPA ................................. 3

        B.    Even if Plaintiff's Allegations do Not Satisfy Rule 9(b), Dismissal is Not the Appropriate Remedy ..................................................................... 7

    II.    The Complaint Sufficiently Alleges a Claim Against Menards for Violations of the MMPA ...................................................................................................... 8

        A.    Plaintiff has Alleged Plausible Claims for Deception, Misrepresentation and Unfair Practices Under the MMPA ............................................................ 9

        B.    Menards' Arguments do Not Provide Any Grounds for Dismissal Based on Failure to State a Claim Under Rule 12(b)(6) ............................................. 12

Conclusion ........................................................................................................................ 15

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abels v. Farmers Commodities Corp.*, 259 F.3d 910 (8th Cir. 2001) ............................................. 2-3

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ................................................................................................. 2

*Aten v. Scottsdale Ins. Co.*, 511 F.3d 818 (8th Cir. 2008) ................................................................ 15

*Barton v. Taber*, 820 F.3d 958 (8th Cir. 2016) .................................................................................. 2

*Baryo v. Philip Morris USA, Inc.*, 435 F. Supp. 2d 961 (W.D. Mo. 2006) ................................... 5, 8

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) ........................................................................ 2

*BJC Health Sys. v. Columbia Cas. Co.*, 478 F.3d 908 (8th Cir. 2007) ............................................ 3

*Bratton v. Hershey Co.*, No. 2:16-cv-4322-C-NKL,
   2017 WL 2126864 (W.D. Mo. May 17, 2017) ........................................................................ 15

*Bryan v. Bank of America, N.A.*, No. 4:17CV1616 RLW,
   2018 WL 485968 (E.D. Mo. Jan. 18, 2018) ............................................................................. 8

*Claxton v. Kum & Go, L.C.*, No. 6:14-cv-03385-MDH,
   2014 WL 6685816 (W.D. Mo. Nov. 26, 2014) ...................................................................... 4-5

*Commercial Prop. Invs., Inc. v. Quality Inns Int'l, Inc.*, 61 F.3d 639 (8th Cir. 1995) ........................ 4

*Courchene v. Citibank, N.A.*, No. 06-4026-CV-C-NKL,
   2006 WL 2192110 (W.D. Mo. Aug. 1, 2006) ........................................................................... 5

*Craft v. Philip Morris Cos.*, 190 S.W.3d 368 (Mo. Ct. App. 2006) ................................................. 6

*Ford v. St. Louis Metro. Towing, L.C.*, No. 4:09cv0512 TCM,
   2010 WL 618491 (E.D. Mo. Feb. 18, 2010) ............................................................................. 8

*Gardner v. Bank of Am., N.A.*, 466 S.W.3d 642 (Mo. Ct. App. 2015) .............................................. 7

*Gibbons v. J. Nuckolls, Inc.*, 216 S.W.3d 667, 670 (Mo. 2007) ....................................................... 14

*Hill v. Bank of America, N.A.*, No. 4:16CV00444-ERW,
   2016 WL 6441599 (E.D. Mo. Nov. 1, 2016) ............................................................................. 5

*Huch v. Charter Commc'ns, Inc.*, 290 S.W.3d 721 (Mo. 2009) ................................... 7-8, 10

*Hughes v. Ester C Co.*, 930 F. Supp. 2d 439 (E.D.N.Y. 2013) ........................................ 5

*Johnson v. City of Shelby*, 135 S. Ct. 346 (2014) .......................................................... 2

*Kelly v. Cape Cod Potato Chip Co.*, 81 F. Supp. 3d 754 (W.D. Mo. 2015) ..................... 6

*Khaliki v. Helzberg Diamond Shops, Inc.*, No. 4:11-CV-00010-NKL,
 2011 WL 1326660 (W.D. Mo. Apr. 6, 2011) ........................................................ 5, 8

*Larabee v. Eichler*, 271 S.W.3d 542 (Mo. 2008) .......................................................... 13

*Lavender v. Wolpoff & Abramson, L.L.P.*, No. 07-0015-CV-W-FJG,
 2007 WL 2507752 (W.D. Mo. Aug. 30, 2007) ........................................................ 5

*Ludwick v. Harbinger Grp., Inc.*, 854 F.3d 400 (8th Cir. 2017) ...................................... 2

*Metcalf v. Lowe's Home Centers, Inc.*, No. 4:09-CV-14 CAS,
 2010 WL 1221855 (E.D. Mo. March 30, 2010) ...................................................... 5

*Muhammad v. Pub. Storage Co.*, No. 14-0246-CV-W-ODS,
 2014 WL 3687328 (W.D. Mo. July 24, 2014) ......................................................... 7

*Murphy v. Stonewall Kitchen, LLC*, 503 S.W.3d 308 (Mo. Ct. App. 2016)............................ 13, 15

*Owen v. Gen. Motors Corp.*, 533 F.3d 913 (8th Cir. 2008) ............................................ 6

*Packard v. Darveau*, 759 F.3d 897 (8th Cir. 2014) ....................................................... 2

*Peel v. Credit Acceptance Corp.*, 408 S.W.3d 191 (Mo. Ct. App. 2013) ..................... 8, 12

*Penrose v. Buffalo Trace Distillery, Inc.*, No. 4:17CV294 HEA,
 2018 WL 705054 (E.D. Mo. Feb. 5, 2018) ............................................................ 15

*Pfitzer v. Smith & Wesson Corp.*, No. 4:13-CV-676-JAR,
 2014 WL 636381 (E.D. Mo. Feb. 18, 2014) ........................................................... 8

*Plubell v. Merck & Co.*, 289 S.W.3d 707 (Mo. Ct. App. 2009)........................................ 6, 11, 13

*Ports Petroleum Co., Inc. of Ohio v. Nixon*, 37 S.W.3d 237 (Mo. 2001) ........................... 8

*Raster v. Ameristar Casinos, Inc.*, 280 S.W.3d 120 (Mo. Ct. App. 2009) ......................... 8

*Rawa v. Monsanto Co.*, No. 4:17CV01252 AFG,
    2017 WL 3392090 (E.D. Mo. Aug. 7, 2017) ...................................................... 15

*Robbe v. Webster Univ.*, 98 F. Supp. 3d 1030 (E.D. Mo. 2015) ...................................... 4

*Scanio v. Zale Delaware, Inc.*, No. 4:12CV37 CDP,
    2012 WL 368741 (E.D. Mo. Feb. 3, 2012) ......................................................... 5

*Snelling v. HSBC Card Servs., Inc.*, No. 4:14CV431 CDP,
    2015 WL 457949 (E.D. Mo. Feb. 3, 2015) ......................................................... 8

*State ex rel. Coca-Cola v. Nixon*, 249 S.W.3d 855 (Mo. 2008) ...................................... 6

*Stephens v. Arctic Cat, Inc.*, No. 4:09CV02131 AGF,
    2012 WL 628867 (E.D. Mo. Feb. 27, 2012) ...................................................... 11

*Summerhill v. Terminix, Inc.*, 637 F.3d 877 (8th Cir. 2011) ....................................... 3

*Tele-Port, Inc. v. Ameritech Mobile Commc'ns, Inc.*, 248 Wis. 2d 846,
    637 N.W.2d 782 (Wis. Ct. App. 2001) ........................................................... 14

*Thornton v. Pinnacle Foods Grp. LLC*, No. 4:16-CV-00158 JAR,
    2016 WL 4073713 (E.D. Mo. Aug. 1, 2016) ........................................................ 5

*Toben v. Bridgestone Retail Operations LLC*, No. 4:11-CV-1834 (CEJ),
    2012 WL 3548055 (E.D. Mo. Aug. 16, 2012) ....................................................... 4

*United States ex rel. Joshi v. St. Luke's Hosp., Inc.*, 441 F.3d 552 (8th Cir. 2006) ............. 3

*United States ex rel. Schell v. Bluebird Media, LLC*, No. 12-cv-04019,
    2013 WL 3288005 (W.D. Mo. June 28, 2013) ..................................................... 3-4

*United States v. NHC Healthcare Corp.*, 115 F. Supp. 2d 1149 (W.D. Mo. 2000) .................... 4

*White v. Just Born, Inc.*, No. 2:17-cv-04025-C-NKL,
    2017 WL 3130333 (W.D. Mo. July 21, 2017) ...................................................... 15

*Wildman v. Am. Century Servs., LLC*, 237 F. Supp. 3d 902 (W.D. Mo. 2017) ....................... 15

*Wright v. Bath & Body Works Direct, Inc.*, No. 12-00099-CV-W-DW,
    2012 WL 12951921 (W.D. Mo. July 10, 2012) ................................................... 5, 8

**Statutes and Regulations**

Missouri Merchandising Practices Act,
  Mo. Rev. Stat. § 407.010 *et seq.* (the "MMPA") ................................................................ 1, 8

Mo. Code Regs. Ann. tit. 15, § 60-8.020 ............................................................................. 7, 11-12

Mo. Code Regs. Ann. tit. 15, § 60-8.040 ................................................................................ 7, 11

Mo. Code Regs. Ann. tit. 15, § 60-8.090 ................................................................................ 7, 12

Mo. Code Regs. Ann. tit. 15, § 60-9.020 ............................................................................. 9-10, 13

Mo. Code Regs. Ann. tit. 15, § 60-9.030 ................................................................................ 9-10

Mo. Code Regs. Ann. tit. 15, § 60-9.070 .................................................................................. 10

Mo. Code Regs. Ann. tit. 15, § 60-9.090 ................................................................................ 10-11

## **Introduction**

Plaintiff brings suit under the Missouri Merchandising Practices Act ("MMPA"), Mo. Rev. Stat. § 407.010 *et seq*., alleging that Menards has committed unlawful and unfair practices by falsely and deceptively representing its 11% Rebate Program. Menards advertises that consumers are able to save 11% on purchased items through the Rebate Program, but this representation is misleading because the "rebate" does not actually reduce the price of the items purchased with either (i) an immediate discount applied at the point of sale or (ii) cash-equivalent reimbursement by mail. Instead, the "rebate" comes in the form of non-transferable store credit that can only be used for in-store purchases of other items at a later date. This "rebate" is different from what the advertisements suggest and is worth less to consumers than an 11% reduction in the price paid for an item. As a result, consumers purchasing items through the 11% Rebate Program have been deprived of the benefit of their bargain and have suffered economic harm.

Menards moves to dismiss Plaintiff's Class Action Petition (the "Complaint"), asserting that Plaintiff's allegations do not satisfy Fed. R. Civ. P. 9(b) and fail to state a claim upon which relief can be granted under Fed. R. Civ. P. 12(b)(6). These arguments should be rejected. The Complaint alleges facts in sufficient detail to satisfy Rule 9(b) by identifying the "who, what, when, where, and how" underlying the MMPA claim. The Complaint also sufficiently alleges that Menards committed unlawful practices under the MMPA by making misrepresentations about the Rebate Program, deceptively advertising and promoting the Rebate Program, and engaging in unfair practices in connection with the Rebate Program.

Even with an overlength brief that violates Local Rule 7.0(d), Menards has not shown that the allegations of the Complaint are deficient in any regard. Accordingly, Menards' motion to dismiss should be denied.

<u>**Argument and Authorities**</u>

On a motion to dismiss for failure to state a claim, the Court "must accept the allegations contained in the complaint as true and draw all reasonable inferences in favor of the nonmoving party." *Packard v. Darveau*, 759 F.3d 897, 899 n.2 (8th Cir. 2014). "This is a highly deferential standard." *Barton v. Taber*, 820 F.3d 958,967 (8th Cir. 2016). To survive a motion to dismiss, a complaint "does not need detailed factual allegations"; it requires only enough factual information "to raise a right to relief above the speculative level" and "to state a claim that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007). Courts are not at liberty to disbelieve the plaintiff's allegations or to credit the defendant's competing version of facts. *Ludwick v. Harbinger Grp., Inc.*, 854 F.3d 400, 406 (8th Cir. 2017) ("[A] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of the facts alleged is improbable.") (quoting *Twombly*, 550 U.S. at 556)).

In practice, Plaintiff is required only to state "simply, concisely, and directly [the] events . . . entitl[ing] [him] to damages," and he is "required to do no more to stave off threshold dismissal for want of an adequate statement of [his] claim." *Johnson v. City of Shelby*, 135 S. Ct. 346, 347 (2014) (per curiam). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

I.    **The Complaint Satisfies the Particularity Requirement of Rule 9(b)**

Menards argues that Plaintiff has failed to state his claim with requisite particularity. Under Rule 9(b), a pleading must include "such matters as the time, place and contents of the false representations, as well as the identity of the person making the misrepresentation and what was obtained or given up thereby." *Abels v. Farmers Commodities Corp.*, 259 F.3d 910, 920 (8th Cir.

2001). "In other words, Rule 9(b) requires plaintiffs to plead the who, what, when, where, and how: the first paragraph of any newspaper story." *Summerhill v. Terminix, Inc.*, 637 F.3d 877, 880 (8th Cir. 2011). The level of particularity required by Rule 9(b) depends on "the nature of the case and the relationship between the parties." *BJC Health Sys. v. Columbia Cas. Co.*, 478 F.3d 908, 917 (8th Cir. 2007).

Rule 9(b) does not create an onerous burden because it "was never meant to require a plaintiff to set forth every factual detail supporting its claim, nor was it meant to fuse the stages of pretrial investigation and discovery." *United States ex rel. Schell v. Bluebird Media, LLC*, No. 12-cv-04019, 2013 WL 3288005, at *3 (W.D. Mo. June 28, 2013). Indeed, the requirements of the Rule are interpreted "in harmony with the principles of notice pleading." *Abels,* 259 F.3d at 920. Furthermore, Rule 9(b) does not require a plaintiff "'to allege specific details of *every* fraudulent claim'—rather, the [plaintiff] must provide *some representative examples* of [the defendant's] alleged fraudulent conduct.'" *Schell*, 2013 WL 3288005, at *7 (quoting *United States ex rel. Joshi v. St. Luke's Hosp., Inc.*, 441 F.3d 552, 557 (8th Cir. 2006)).

## A.   Plaintiff has Sufficiently Alleged the Who, What, Where, When and How of Menards' Alleged Misconduct Under the MMPA

Plaintiff's Complaint complies with Rule 9(b) because it identifies the ***who***: Plaintiff Robert Ravencamp, Missouri consumers and Menards (Compl., Doc. #1-1,  ¶¶ 6-7); ***what***: the 11% Rebate Program (*id.* ¶¶ 1-3, 11-12, 17-23); ***where***: Plaintiff purchased products at the Menards' store in Independence, Missouri, and Menards misrepresented the Rebate Program in print advertisements, in-store signage and television advertisements (*id.* ¶¶ 1, 6, 11, 15, 19); ***when***: Plaintiff's purchases were made in 2017 and Menards has operated its 11% Rebate Program throughout the class period (*id.* ¶¶ 6, 22); and ***how***: consumers are injured because (i) Menards' adver-

tisements give the false and deceptive impression that the "rebate" will reduce the "final price" paid for a purchased product through cash-equivalent reimbursement when the "rebate" actually has no bearing on the purchase price because it is given in the form of less valuable store credit for future purchases of *other* products, and (ii) the Rebate Program is designed to discourage and impede consumers from claiming and using their "rebates" (*id.* ¶¶ 12-21).

These allegations satisfy the purpose of Rule 9(b), which is designed to "facilitate a defendant's ability to respond and to prepare a defense to charges of fraud." *Claxton v. Kum & Go, L.C.*, No. 6:14-cv-03385-MDH, 2014 WL 6685816, at *7 (W.D. Mo. Nov. 26, 2014) (quoting *Commercial Prop. Invs., Inc. v. Quality Inns Int'l, Inc.*, 61 F.3d 639, 644 (8th Cir. 1995)); *see also Robbe v. Webster Univ.*, 98 F. Supp. 3d 1030, 1035 (E.D. Mo. 2015); *Schell*, 2013 WL 3288005, at *4. The fact that Menards filed a detailed (and overlength) motion to dismiss amply demonstrates that it is able to sufficiently respond and defend against Plaintiff's claims. *United States v. NHC Healthcare Corp.*, 115 F. Supp. 2d 1149, 1151 (W.D. Mo. 2000) (denying motion to dismiss under Rule 9(b) because "the Defendant has mounted a vigorous defense thus far in this case it does not appear to be hampered by a lack of specific allegations").

The allegations here are similar to those found to satisfy Rule 9(b) in *Toben v. Bridgestone Retail Operations LLC*, No. 4:11-CV-1834 (CEJ), 2012 WL 3548055 (E.D. Mo. Aug. 16, 2012):

> Plaintiff alleges that in 2007 she received services to her vehicle at the defendant's facility in Manchester, Missouri. She alleges that the defendant charged her a "shop supply" fee which was not related to any supplies or services provided by defendant. Plaintiff also alleges that the defendant disguised the "shop supply" fee as a legitimate charge for providing supplies to its customers when in fact the fee is the defendant's profit. The Court finds that these allegations sufficiently state the who, what, when, where, and how of defendant's fraudulent conduct. Therefore, Count I [the MMPA claim] will not be dismissed.

*Id.* at *2.

Courts in numerous other cases have found similar allegations sufficient under Rule 9(b) with respect to claims under the MMPA. *See, e.g.*, *Thornton v. Pinnacle Foods Grp. LLC*, No. 4:16-CV-00158 JAR, 2016 WL 4073713, at *4 (E.D. Mo. Aug. 1, 2016); *Hill v. Bank of America, N.A.*, No. 4:16CV00444-ERW, 2016 WL 6441599, at *8 (E.D. Mo. Nov. 1, 2016); *Claxton*, 2014 WL 6685816, at *7; *Scanio v. Zale Delaware, Inc.*, No. 4:12CV37 CDP, 2012 WL 368741, at *3 (E.D. Mo. Feb. 3, 2012); *Metcalf v. Lowe's Home Ctrs., Inc.*, No. 4:09-CV-14 CAS, 2010 WL 1221855, at *2 (E.D. Mo. March 30, 2010); *see also Hughes v. Ester C Co.*, 930 F. Supp. 2d 439, 470-71 (E.D.N.Y. 2013).[1]

Menards demands a level of detail not required by Rule 9(b) or the substantive law that controls liability under the MMPA. For example, Menards argues that the Complaint is deficient because it does not include more detail regarding Plaintiff's purchases and the role the challenged advertisements played with respect to his purchase decision. (Doc. #5 at 13-14.) The case law demonstrates that this level of detail is not required. *See Thornton*, 2016 WL 4073713, at *4 (rejecting argument that pleading failed to satisfy Rule 9(b) because "Plaintiff has not pled any specific facts regarding her purchase . . . or information bearing on her understanding of the [alleged misrepresentation]"); *Hill*, 2016 WL 6441599, at *8 (rejecting argument that pleading violated Rule 9(b) because it "failed to allege any specific facts supporting causation and the existence of any ascertainable loss resulting from the alleged MMPA violation").

---

[1] In contrast to the Complaint in this case, which provides particular details about the "who, what, when, where, and how" supporting Plaintiff's MMPA claim, the complaints in the cases Menards cites contained nothing more than conclusory allegations of wrongdoing. *See Wright v. Bath & Body Works Direct, Inc.*, No. 12-00099-CV-W-DW, 2012 WL 12951921, at *6 (W.D. Mo. July 10, 2012); *Khaliki v. Helzberg Diamond Shops, Inc.*, No. 4:11-CV-00010-NKL, 2011 WL 1326660, at *4 (W.D. Mo. Apr. 6, 2011); *Lavender v. Wolpoff & Abramson, L.L.P.*, No. 07-0015-CV-W-FJG, 2007 WL 2507752, at *2 (W.D. Mo. Aug. 30, 2007); *Courchene v. Citibank, N.A.*, No. 06-4026-CV-C-NKL, 2006 WL 2192110, at *2 (W.D. Mo. Aug. 1, 2006); *Baryo v. Philip Morris USA, Inc.*, 435 F. Supp. 2d 961, 968 (W.D. Mo. 2006).

Menards also demands additional detail about "what advertisement supposedly caused [Plaintiff's] loss." (Doc. #5 at 14.) This suggests Menards is looking for the advertisement that induced Plaintiff's purchase. But Missouri law is clear that reliance and transaction causation are not elements of an MMPA claim. *See Plubell v. Merck & Co.*, 289 S.W.3d 707, 714 (Mo. Ct. App. 2009) ("Both our case law and the governing regulations make clear that the consumer's reliance on an unlawful practice is not required under the MMPA. . . . Plaintiffs are thus not required to . . . offer individualized proof that the misrepresentation colored the [purchase] decision"; "The MMPA does not require that an unlawful practice cause a 'purchase.' . . . Thus, a plaintiff's *loss* should be a result of the defendant's unlawful practice, but the statute does not require that the *purchase* be caused by the unlawful practice [and] the class members are not individually required to show what they would or would not have done had the product not been misrepresented . . ."). Because Plaintiff is not required to prove that any particular advertisement "colored" his decision to purchase products under the 11% Rebate Program, the additional detail Menards seeks is immaterial and irrelevant to the sufficiency of the Complaint.[2]

---

[2] Citing *Owen v. General Motors Corp.*, 533 F.3d 913, 922 (8th Cir. 2008), Menards also maintains that Plaintiff has failed to allege a causal connection between the ascertainable loss and the unfair or deceptive merchandising practice. (Doc. #5 at 15.) This argument misunderstands Missouri law, which holds that an ascertainable loss occurs as a result of an unlawful practice when a buyer makes a purchase and receives something worth less than represented, regardless of whether the misrepresentation caused the purchase. *Plubell*, 289 S.W.3d at 714. Plaintiff sufficiently pleads an ascertainable loss in this case by alleging that the rebate actually provided to consumers was worth less than advertised because it did not have the "qualities and economic value" represented. *State ex rel. Coca-Cola v. Nixon*, 249 S.W.3d 855, 863 (Mo. 2008) (citing *Craft v. Philip Morris Cos.*, 190 S.W.3d 368, 375 (Mo. Ct. App. 2006)); *see also Kelly v. Cape Cod Potato Chip Co.*, 81 F. Supp. 3d 754, 758-59 (W.D. Mo. 2015).

*Owen* is also easily distinguished because it involved a summary judgment motion, not a motion to dismiss. Furthermore, *Owen* involved a claim that the defendant violated the MMPA by failing to disclose a product defect that did not exist in all of the subject automobiles. 533 F.3d at 922. In contrast to *Owen*, Plaintiff is not alleging that Menards failed to disclose a defect in the products he purchased. Instead, he alleges that the Rebate Program is uniformly deceptive and this deception causes all purchasers under the program to sustain an ascertainable loss. (Compl. ¶¶ 22-23.)

## B. Even if Plaintiff's Allegations do Not Satisfy Rule 9(b), Dismissal is Not the Appropriate Remedy

If the Court finds that the Complaint is insufficient to satisfy Rule 9(b), it does not necessarily follow that the Complaint should be dismissed. First, the application of Rule 9(b) is irrelevant to the extent Plaintiff alleges MMPA claims based on unfair practices, rather than fraud. *See Muhammad v. Pub. Storage Co.*, No. 14-0246-CV-W-ODS, 2014 WL 3687328, at *3-4 (W.D. Mo. July 24, 2014) (holding that Rule 9(b) does not apply to non-fraud-based claims because "[t]he MMPA addresses misconduct beyond fraud and includes 'unfair practices.'"). The MMPA's implementing regulations define "unfair practices" to include "unethical, unscrupulous or oppressive" conduct, even if such conduct does not rise to the level of deception, fraud or misrepresentation. Mo. Code Regs. Ann. tit. 15, § 60-8.020(1)-(2).[3] This includes an advertisement not made in good faith or that "[p]resents a risk of, or causes substantial injury to consumers." *Id.* §§ 60-8.040(1), 60-8.090(1)(B). Here, the Complaint includes allegations to support a claim that Menards committed unethical and unscrupulous acts by offering a baited and overly complicated Refund Program designed to devalue the rebate and suppress rebate claims. (Compl. ¶¶ 17-21.) Because the claim goes beyond fraud to suggest that Menards did not act in good faith and caused substantial injury to consumers, it is not subject to Rule 9(b).

In any event, dismissal is unnecessarily punitive under the circumstances. The Complaint was filed in Missouri state court where MMPA claims are not subject to a heightened pleading standard. *Gardner v. Bank of Am., N.A.*, 466 S.W.3d 642, 648 (Mo. Ct. App. 2015). If the Court finds that the Complaint does not satisfy Rule 9(b), it should construe Menards' motion as one for a more definite statement and allow Plaintiff to file an amended pleading for the first time in

---

[3] These regulations were adopted and promulgated by the Missouri Attorney General and "have independent power as law." *Huch v. Charter Commc'ns, Inc.*, 290 S.W.3d 721, 725 (Mo. 2009).

federal court correcting any noted deficiencies. *Bryan v. Bank of America, N.A.*, No. 4:17CV1616 RLW, 2018 WL 485968, at *5 (E.D. Mo. Jan. 18, 2018); *Snelling v. HSBC Card Servs., Inc.*, No. 4:14CV431 CDP, 2015 WL 457949, at *11 (E.D. Mo. Feb. 3, 2015); *Pfitzer v. Smith & Wesson Corp.*, No. 4:13-CV-676-JAR, 2014 WL 636381, at *3-*4 (E.D. Mo. Feb. 18, 2014). Even the case law cited by Menards has adopted this approach. *Wright*, 2012 WL 12951921, at *6; *Khaliki*, 2011 WL 1326660, at *5; *Baryo*, 435 F. Supp. 2d at 969.

## II. The Complaint Sufficiently Alleges a Claim Against Menards for Violations of the MMPA

The MMPA prohibits "deception, fraud, false pretense, false promise, misrepresentation, unfair practice or the concealment, suppression, or omission of any material fact in connection with the sale or advertisement of any merchandise in trade or commerce." Mo. Rev. Stat. § 407.020.1. The statute reflects a "clear policy to protect consumers" and "to preserve fundamental honesty, fair play and right dealings in public transactions." *Huch v. Charter Commc'ns, Inc.*, 290 S.W.3d 721, 724-25 (Mo. 2009).

The MMPA "paints in broad strokes to prevent evasion thereof due to overly meticulous definitions," and the statute's expansive scope influences the Court's determination of pleading sufficiency. *Ford v. St. Louis Metro. Towing, L.C.*, No. 4:09cv0512 TCM, 2010 WL 618491, at *8, *10 (E.D. Mo. Feb. 18, 2010); *Raster v. Ameristar Casinos, Inc.*, 280 S.W.3d 120, 131 (Mo. Ct. App. 2009). Notably, the conduct covered by the statute is virtually limitless:

> In interpreting [Section 407.020], [Missouri] courts have held that the "plain and ordinary meaning of the words themselves . . . are unrestricted, all-encompassing and exceedingly broad. For better or worse, the literal words cover every practice imaginable and every unfairness to whatever degree."

*Peel v. Credit Acceptance Corp.*, 408 S.W.3d 191, 208 (Mo. Ct. App. 2013) (quoting *Ports Petroleum Co., Inc. of Ohio v. Nixon*, 37 S.W.3d 237, 240 (Mo. 2001)).

## A. Plaintiff has Alleged Plausible Claims for Deception, Misrepresentation and Unfair Practices Under the MMPA

Plaintiff alleges that Menards markets its Rebate Program as directly reducing the cost of merchandise purchased at Menards by 11% to arrive at a "final price," either through (i) immediate discount at the point of sale or (ii) cash-equivalent reimbursement by mail. (Compl. ¶¶ 12-17.) The Menards Rebate Program actually provides neither, but instead gives consumers a non-transferrable store credit good only on future purchases of *other* products at Menards stores. This store credit does not have the represented effect of directly reducing the purchase price of the advertised products and is less useful and less valuable to consumers than a point-of-sale discount or cash-equivalent rebate because store credit has limited utility and can only be redeemed by spending more money at Menards. (*Id.* ¶ 17.) The rebate also is less valuable than advertised because claimants must pay postage to claim the rebate. (*Id.* ¶ 18.) These and other allegations outlined below are sufficient to state a claim against Menards under the MMPA for deception, misrepresentation and unfair practices.

**Deception.** Regulations implementing the MMPA define the term "deception" very broadly as "any method, act, use, practice, advertisement or solicitation that has the ***tendency or capacity*** to mislead, deceive, or cheat*, or that **tends to create** a false impression.*" Mo. Code Regs. Ann. tit. 15, § 60-9.020(1) (emphasis added). Reliance, actual deception, and intent to deceive are not elements that must be that must be proven to establish deception. *Id.* § 60-9.020(2). "Deception may occur in securing the first contact with a consumer and is not cured even though the true facts . . . are subsequently disclosed." *Id.* The regulations also create a cause of action for "deceptive format," providing that "[i]t is deception for any person in an advertisement . . . to use any format which because of its overall appearance has the tendency or capacity to mislead consumers." *Id.* § 60-9.030(1).

The Complaint states a claim for deception under the MMPA by alleging that Menards' advertisement of the Rebate Program has the tendency or capacity to mislead consumers into believing that the "rebate" will directly reduce the "final price" of advertised products. As one example, the Complaint alleges that the format of Menards' print advertisements emphasizes the illusory "final price" of the products in oversized, brightly colored text designed to capture consumer attention while hiding material details about the nature of the rebate in barely legible fine print elsewhere in the material. (Compl. ¶ 19.)[4] This states a cognizable violation of the MMPA's restriction on "deceptive format." Mo. Code Regs. Ann. tit. 15, § 60-9.030(1). Under the statute's governing regulations, it is no defense for Menards to argue that the initial deceptive nature of the advertisement is cured by other information provided in the advertisement's fine print. *Id.* § 60-9.020(2); *see also Huch*, 290 S.W.3d at 727 (rejecting defense to MMPA claim that plaintiff "voluntarily [paid] money with full knowledge of the facts" because that defense is "illogical," "inequitable" and "contrary to public policy" expressed by the MMPA).

**Misrepresentation.** "Misrepresentation" is defined for purposes of the MMPA as "an assertion that is not in accord with the facts." Mo. Code Regs. Ann. tit. 15, § 60-9.070(1). The governing regulations create a cause of action for "half-truths," providing that "[i]t is a misrepresentation for any person in connection with the advertisement or sale of merchandise to omit to state a material fact necessary in order to make statements made, in light of circumstances under which they are made, not misleading." *Id.* § 60-9.090(1).

The Complaint states a claim for misrepresentation by alleging that Menards' print advertisements falsely calculate the "final price" of merchandise purchased under the 11% Rebate

---

[4] The copy of the Complaint attached to Menards' Notice of Removal is reproduced in black and white. To provide full context, color copies of the pages containing the subject advertisements are re-attached hereto as **Exhibit 1**.

Program. The "final price" representation is false on its face because the purchase price of the advertised products can *never* be reduced by the "rebate," which comes in the form of store credit that can only be used on future purchases at Menards stores to reduce the price of *other* products. (Compl. ¶¶ 14-17.) The Rebate Program also requires consumers to pay postage to claim the "rebate," meaning that a portion of the represented rebate value is illusory and falsely represented no matter what form the "rebate" takes. (*Id.* ¶ 18.) At a minimum, the print advertisements support a claim for misrepresentation by "half-truth" because the calculation of the "final price" fails to inform consumers that the "rebate" does not directly reduce the product purchase price; even in the fine print, the reference to "merchandise credit check" is insufficient to inform consumers that they will receive only non-transferrable store credit for future purchases, as opposed to a cash-equivalent rebate check returning a portion of the price of the already purchased product. *See* Mo. Code Regs. Ann. tit. 15, § 60-9.090(1).

The Complaint also alleges misrepresentations in Menards' television advertisements that include the same "final price" representations and on its in-store signage that promises an "11% rebate on everything" without indicating the limited nature of the "rebate." (Compl. ¶ 19.) These alleged misrepresentations are independently actionable, regardless of whether Plaintiff saw them or relied on them in making purchase decisions. *Plubell*, 289 S.W.3d at 714; *see also Stephens v. Arctic Cat, Inc.*, No. 4:09CV02131 AGF, 2012 WL 628867, at *4 (E.D. Mo. Feb. 27, 2012) ("Under the MMPA a plaintiff need not prove that he relied on the acts or omissions complained of or that they induced the sale or purchase.").

**Unfair Practices.** As noted above, the MMPA also prohibits "unfair practices," which include any advertisement that is unethical or unscrupulous, is not made in good faith, or causes substantial injury to consumers. Mo. Code Regs. Ann. tit. 15, §§ 60-8.020(1)-(2), 60-8.040(1),

60-8.090(1)(B). "Proof of deception, fraud, or misrepresentation is not required to prove unfair practices." *Id.* § 60-8.020(2). Here, the Complaint includes allegations indicating that Menards acted unethically or unscrupulously, in bad faith, and in a manner that caused substantial injury to consumers by offering a baited and overly complicated Refund Program designed to devalue the rebate and suppress rebate claims. (Compl. ¶¶ 17-21.) This states a claim for unfair practices under the expansive provisions of the MMPA. *See Peel*, 408 S.W.3d at 205 (recognizing that "the literal words of the statute cover every practice imaginable and every unfairness to whatever degree." (internal brackets omitted)).

### B. Menards' Arguments do Not Provide Any Grounds for Dismissal Based on Failure to State a Claim Under Rule 12(b)(6)

Menards first argues that its advertisements are not actionable when considered "in context." (Doc #5 at 16-17.) But Menards has not addressed its allegedly deceptive television advertisements (Compl. ¶ 19) and the other advertising materials that Menards attaches to its motion actually bolster Plaintiff's claim. The print advertisement (Doc. #5-2), for example, shows just how tiny and hidden the fine print appears at the bottom of the page. It is divorced from the deceptive and false calculations of "final price," lacks the prominence to direct consumer attention to any qualifications, and lacks the clarity to give consumers an accurate understanding of the "final price" representations in light of the vague reference to a "merchandise credit check." It also appears on only the first and last pages, limiting its conspicuousness and reducing the chances of it being read and understood by consumers. And no matter how the qualifying language might be read or interpreted, it will always be false in part because it fails to advise consumers that postage is required to redeem the rebate, meaning that a portion of rebate value is illusory and the amount of the savings is overstated.

The in-store signage (Doc. #5-3) is even more misleading because it suggests a direct 11% savings and includes no indication that the available "rebate" is in the form of in-store credit on future purchases or that postage is required to claim the "rebate." The fact that the in-store signs reference a "flyer" does not cure their deceptive nature. Menards presumes that the "flyer" is the same thing as the print advertisement discussed above, but the in-store signs do not say this and there is nothing to indicate that consumers would have this understanding. And even if the "flyer" and print advertisement are the same, the "flyer" fails to cure Menards' false and deceptive advertising of the Rebate Program for the reasons discussed above.

The rebate form (Doc. #5-4) also does not cure the false and deceptive advertisements. The advertisements do not incorporate or refer to the rebate form as a source of information for consumers, and the rebate form would only come to consumers' attention *after* their purchases are complete and the harm from Menards' misconduct already occurred. *See Plubell*, 289 S.W.3d at 715 (MMPA damages are measured by the benefit of the bargain rule); *Larabee v. Eichler*, 271 S.W.3d 542, 548 (Mo. 2008) (benefit of the bargain damages are measured at the time of the transaction). The language in the rebate form also suffers from the same vagueness and infirmity as the qualifications in Menards' print advertisements, discussed above.

As a matter of Missouri law, Menards cannot rely on the fine print in the "flyer" or the rebate form to neutralize the deceptive nature of its advertisements. Mo. Code Regs. Ann. tit. 15, § 60-9.020(2) ("Deception may occur in securing the first contact with a consumer and is not cured even though the true facts . . . are subsequently disclosed."); *see also Murphy v. Stonewall Kitchen, LLC*, 503 S.W.3d 308, 312-13 (Mo. Ct. App. 2016) (rejecting argument that manufacturer can avoid liability under the MMPA by discretely providing accurate information that corrects otherwise misleading representations). This follows the general rule that the MMPA should

be applied to the protection of Missouri consumers. *Gibbons v. J. Nuckolls, Inc.*, 216 S.W.3d 667, 670 (Mo. 2007) ("Relevant precedent consistently reinforces the plain language and spirit of the [MMPA] to further the ultimate objective of consumer protection . . . .").

Menards next argues that it has not mispresented the nature of its rebate because it never promised consumers a point-of-sale discount. (Doc. #5 at 17.) This argument mischaracterizes Plaintiff's claim, which does not assert that consumers should have been given point-of-sale discounts. An immediate discount at the time of sale certainly would have been one method of truthfully providing a "rebate" that directly reduced the "final price" of purchased products, but the Complaint also alleges that a mail-in rebate program would be consistent with Menards' "final price" representations if it provided cash-equivalent reimbursement of a portion of the purchase price (*e.g.*, a rebate check that could be cashed at a bank). (Compl. ¶¶ 13-17.) Instead, the "rebate" actually provided by Menards was less useful and less valuable to consumers because it was in the form of store credit for future purchases, which does not reduce the price of already purchased products and has no cash value without the consumer being forced to spend more money at a Menards store.

There is no confusion in the Complaint between "discounts" and "rebates." Industry literature and dictionary definitions indicate that "rebates" should have the effect of reimbursing part of the price paid for a product (Compl. ¶¶ 12-13), and case law confirms that the terms "rebate" and "discount" are legally interchangeable. *Tele-Port, Inc. v. Ameritech Mobile Commc'ns, Inc.*, 637 N.W.2d 782, 790 (Wis. Ct. App. 2001) (citing Black's Law Dictionary and holding that "the words 'rebates,' 'refunds,' and 'discounts' mean essentially the same thing"). Whatever

term is used, Menards has failed to deliver the promised reimbursement of part of the payment price for already purchased goods.[5]

The motion to dismiss is Menards' attempt to put its own spin on Plaintiff allegations, but a motion to dismiss is not the proper means of resolving factual disputes and differences of interpretation. *See Wildman v. Am. Century Servs., LLC*, 237 F. Supp. 3d 902, 914 (W.D. Mo. 2017) (citing *Aten v. Scottsdale Ins. Co.*, 511 F.3d 818, 821 (8th Cir. 2008)). Arguments regarding ordinary consumers' understanding of advertisements and whether a defendant's practice is unfair or deceptive are matters of fact that cannot be resolved on a motion to dismiss. *Murphy*, 503 S.W.3d at 312. Missouri federal courts routinely follow *Murphy*, refusing to dismiss MMPA claims where defendants have raised similar fact issues over consumer understanding.[6] This Court should do the same.

## Conclusion

For the foregoing reasons, Plaintiff respectfully requests that the Court deny Menards' motion to dismiss in its entirety.

---

[5] Menards quotes a New York statutory definition of "rebate," but that definition is not binding on Missouri consumers and has not been adopted by Missouri courts. It is also inconsistent with commonly understood meanings of the term, as indicated above.

[6] *See Penrose v. Buffalo Trace Distillery, Inc.*, No. 4:17CV294 HEA, 2018 WL 705054, at *3 (E.D. Mo. Feb. 5, 2018) ("The Court cannot conclude as a matter of law and at this stage of the litigation that the packaging is not misleading . . . ."); *Rawa v. Monsanto Co.*, No. 4:17CV01252 AFG, 2017 WL 3392090, at *4 (E.D. Mo. Aug. 7, 2017) ("[W]hether a reasonable consumer would be deceived by a product label is often a question of fact that cannot be resolved on a motion to dismiss"); *White v. Just Born, Inc.*, No. 2:17-cv-04025-C-NKL, 2017 WL 3130333, at *4 (W.D. Mo. July 21, 2017) ("The Court cannot conclude as a matter of law and at this stage of the litigation that the packaging is not misleading."); *Bratton v. Hershey Co.*, No. 2:16-cv-4322-C-NKL, 2017 WL 2126864, at *7 (W.D. Mo. May 17, 2017) ("[H]ow a reasonable consumer would perceive certain packaging information [is] a question appropriately addressed on a motion for summary judgment or trial, not a motion to dismiss").

Respectfully submitted,

SHANK & MOORE, LLC

By: /s/ Stephen J. Moore
    Christopher S. Shank      MO #28760
    David L. Heinemann     MO #37622
    Stephen J. Moore        MO #59080
    1968 Shawnee Mission Pkwy, Suite 100
    Mission Woods, Kansas 66205
    Telephone:  816.471.0909
    Facsimile:   816.471.3888
    chris@shankmoore.com
    davidh@shankmoore.com
    sjm@shankmoore.com

    *Attorneys for Plaintiff Robert Ravencamp*

## CERTIFICATE OF SERVICE

The undersigned attorney hereby certifies that the foregoing document was filed this 1st day of March, 2018, via the Court's CM/ECF system, which shall send electronic notice of the same to the following counsel of record:

**Counsel for Defendant Menard, Inc.**
Bryant T. Lamer
Thomas Hiatt
SPENCER FANE LLP
1000 Walnut Street, Suite 1400
Kansas City, Missouri 64106

-and-

Brian P. Norton
Andrew C. Nordahl
FREEBORN & PETERS LLP
311 South Wacker Drive, Suite 3000
Chicago, Illinois 60606

    /s/ Stephen J. Moore
    Attorney for Plaintiff