# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF MISSOURI
# WESTERN DIVISION

| | | |
|---|---|---|
| ROBERT RAVENCAMP, on behalf of himself and all others similarly situated, | ) ) ) | |
| Plaintiff, | ) ) | |
| vs. | ) ) | Case No. 18 CV 107-BP |
| MENARD, INC., | ) ) | |
| Defendant. | ) | |

## DEFENDANT'S REPLY SUGGESTIONS IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFF'S COMPLAINT PURSUANT TO FED. R. CIV. P. 9(b) AND 12(b)(6)

Bryant T. Lamer
Thomas Hiatt
SPENCER FANE LLP
1000 Walnut Street, Suite 1400
Kansas City, Missouri 64106
Tel.   (816) 474-8100
Fax    (816) 474-3216
blamer@spencerfane.com
thiatt@spencerfane.com

Brian P. Norton
Andrew C. Nordahl
FREEBORN & PETERS LLP
311 South Wacker Dr., Suite 3000
Chicago, Illinois 60606
Tel.   (312) 360-6000
Fax    (312) 360-6520
bnorton@freeborn.com
anordahl@freeborn.com

## I. INTRODUCTION

Ravencamp's suggestions confirm that his complaint should be dismissed. First, while Ravencamp ultimately concedes that his claim that Menards violated the MMPA by misrepresenting the terms of its 11% rebate sale must satisfy Rule 9(b), his suggestions cannot, and do not, supply the necessary facts missing from his complaint. When his arguments are finally sorted, Menards is still left to defend a claim that alleges little more than the allegation that Ravencamp bought something from the Menards' Independence, Missouri store at some price, at some time in 2017. Nor is this deficiency cured by the print ads that he partially reproduces out of context in this complaint, since they do not purport to cover the period during which he supposedly bought something from Menards. To be clear, Menards 11% rebate advertisements change and it can hardly defend itself against his claims, if Ravencamp cannot even identify what he bought and when he bought it. The case law, including Ravencamp's primary authority, is clear that his allegations are not enough to satisfy Rule 9(b). *See infra* at 4-6.

Second, Ravencamp's claim that Menards violated the MMPA should be dismissed pursuant to Rule 12(b)(6), because it hinges entirely on his legal conclusion that the term "rebate" can only mean a ***cash*** discount at the time of purchase or afterwards. As a result, he contends that Menards "Final Price" is deceptive because a consumer never gets any cash rebate from Menards. Ravencamp, however, offers no facts or authority to support this legal conclusion. Indeed, what can be gleaned from his complaint and suggestions is that the term rebate is vague and ambiguous and can mean ***many*** things and take ***many*** forms, including a mail-in rebate in the form of a store credit. Further, to avoid any deception, Menard plainly points out in its advertisements that the 11% rebate is a mail-in rebate in the form of a store

credit. In the absence of an applicable definition of the relevant term at issue, the court in *Kelly v. Cape Cod Potato Chip Co.*, 81 F. Supp. 3d 754, 761-62 (W.D. Mo. 2015), on which Ravencamp relies, held that plaintiff's claim of unlawful conduct had to be dismissed pursuant to Rule 12(b)(6). The same circumstances warrant dismissal here. *See infra* at 6-10.

## II. ARGUMENT

### A. Ravencamp Has Not Complied With Rule 9(b)'s Heightened Pleading Requirements.

Ravencamp ultimately concedes (at pp. 2-3) that when fraud or misrepresentation is an element of a MMPA claim, Rule 9(b) requires that a party "state with particularity the circumstances constituting fraud."[1] Because the purpose of this rule is to ensure that a defendant is able to respond specifically and quickly to potentially damaging allegations, Ravencamp does not dispute that a plaintiff "should include facts such as the time, place and contents of the false representations and details of the fraudulent acts, including when the acts occurred and who engaged in them." *United States ex rel. Joshi v. St. Luke's Hosp., Inc.*, 441 F.3d 552, 556 (8th Cir. 2006).

Despite Ravencamp's efforts to recharacterize his complaint, it is hopelessly short on facts and long on conclusory allegations, which are not enough to satisfy Rule 9(b). Menards is still left with an incomplete picture that amounts to little more than this: Ravencamp bought *something* from the Menard's store in Independence, Missouri, at *some price*, at *some time* in 2017. So, while Ravencamp has supplied the who and the where, missing is the what, when and how, as well as the content of the alleged false representations, including the details of the fraudulent acts.

---

[1] Ravencamp's passing argument that Rule 9(b) is irrelevant to claims alleging unfair practices, rather than misrepresentation or fraud, is itself irrelevant since the gravamen of his complaint is that Menards "misrepresented" its 11% rebate program. *See* Doc. 1 at ¶¶ 1, 6, 16-19, 22, 34.

2

Nor, contrary to Ravencamp's argument, are these facts supplied by the three random product ads from a printed flyer that he partially reproduces in his complaint (albeit out of context). *See* Doc 1. at ¶ 15. Nowhere does Ravencamp allege that he purchased any of these three items or that he purchased any items from Menards during the 11% rebate sale held from June 18-24, 2017, the dates the advertisement containing these examples was active. *See* Doc. 5, at 5.[2] Therefore, these examples do not provide Menards with the content of the alleged false representations about which Ravencamp complains or the details of the supposedly fraudulent conduct. Moreover, with respect to Menards' television, radio, internet and in-store advertisements for the 11% rebate sales, all Ravencamp alleges are conclusory allegations that such advertisements were false and deceptive. *See* Doc. 1 at ¶¶ 1, 7, 11, 19, 22. Again, there are no details, content, or dates or relationship to any purchase Ravencamp made.

The problem with all of this is that Menards does not run the same advertisements for all 11% rebate sales. Without knowing what Ravencamp bought, when he bought it and the content of the alleged false representations, Menards simply cannot defend itself against his claims. Nor do the cases Ravencamp cites support him. His primary authority is *Toben v. Bridgestone Retail Operations, LLC*, 2012 WL 3548055 (E.D.Mo. Aug. 16, 2012), which Ravencamp contends (at p. 4) held that allegations similar to those alleged were found to have satisfied Rule 9(b). Ravencamp has not been candid with the Court.

Ravencamp block quotes a portion of a paragraph from the *Toben* decision (at p. 4) attempting to convey the impression that the *Toben* court found that plaintiff had satisfied Rule 9(b) without ever identifying the specific services she had purchased or the date she had

---

[2] Ravencamp twice chastises (at pp. 1, 4) Menards supposedly "overlength brief that violates Local Rule 7.0(d)." Ravencamp, however, overlooks Local Rule 7.0(d)(2), which provides that "statements of fact . . . do not count toward these page limitations." Because Menards' 18-page brief devotes much more than three pages to its statement of facts, Menards' brief is well under Rule 7.0(d)'s 15-page limit.

purchased them. But Ravencamp omits the first line of the paragraph and associated footnote, which line provides that "[t]he Court finds that the amended complaint satisfies the heightened pleading requirements of Rule 9(b),[1]" and which footnote states that "***[t]he Court considers the purchase agreement attached as an exhibit to be part of the amended complaint***." *Toben*, 2012 WL 3548055, at *2 (emphasis added).

Attached as Exhibit A is a copy of the amended complaint in *Toben*, with the purchase agreement to which the court referred. *See* Plaintiff's Amended Class Action Complaint at 11, *Toben v. Bridgestone Retail Operations, LLC*, No. 4:11-cv-01834 NAB (E.D. Mo. Nov. 2, 2011). That agreement provides the who, what, when, where, why and how that are missing from this case. If, as in *Toben*, had Ravencamp attached his receipt, Menards' would have most of the details it would need to defend itself. Because Ravencamp did not do so, however, this case is nothing like *Toben* and he has failed to satisfy Rule 9(b). The other cases on which Ravencamp relies are equally inapposite as each alleges far more details than his complaint does.[3]

---

[3] *Thornton v. Pinnacle Foods Grp. LLC*, 2016 WL 4073713 (E.D. Mo. Aug. 1, 2016) (plaintiff alleged that in January 2016, she purchased a box of "Duncan Hines Simple Mornings Blueberry Streusel Premium Muffin Mix" at Schnucks for $3.58); *Hill v. Bank of Am., N.A.*, 2016 WL 6441599 (E.D. Mo. Nov. 1, 2016) (plaintiff alleged voluminous detail in the purportedly deceptive mortgage transactions at issue, including specific dates, loan payment amounts, mortgage foreclosure dates, residence repurchase dates and amounts); *Claxton v. Kum & Go, L.C.*, 2014 WL 6685816 (W.D. Mo. Nov. 26, 2014) (plaintiff alleged that he made a gasoline purchase of $49.97 for his Chevrolet Pickup on July 18, 2014, from Kum & Go store number 473); *Scanio v. Zale Del., Inc.*, 2012 WL 368741 (E.D. Mo. Feb. 3, 2012) (the court found that "[t]he complaint contains the specific dates and location where the alleged fraud occurred, as well as the service which is the subject of the fraud claim" and that "[t]he plaintiffs have alleged the specific dates of each interaction and identified the manager of the Mid–Rivers Mall store as one of the individuals involved"); *Metcalf v. Lowe's Home Ctrs., Inc.*, 2010 WL 1221855 (E.D. Mo. March 30, 2010) (the court found that plaintiffs identified a specific time, place, product purchased, and the content of the alleged misrepresentation); *Hughes v. Ester C Co.*, 930 F. Supp. 2d 439 (E.D.N.Y. 2013) (plaintiff alleged the product purchased, the dates and locations the product was purchased, and the particular representations made by defendants alleged to be false.)

Indeed, *Blake v. Career Educ. Corp.*, 2009 WL 140742, at *3 (E.D. Mo. Jan. 20, 2009), is on point, In this case, the court dismissed a complaint for fraud involving misrepresentations in connection with college admissions because plaintiff had failed to comply with Rule 9(b):

> These allegations are extremely broad, and notably fail to mention: (1) which particular admissions representative (name or unnamed) made each of the alleged fraudulent misrepresentations to each of the name Plaintiffs; (2) the content of each of the alleged fraudulent misrepresentations; (3) at which campus each of the alleged fraudulent misrepresentations took place; (4) the precise date on which each of the alleged fraudulent misrepresentations was made by an admissions representative; and (5) through what method each of the alleged fraudulent misrepresentations was communicated by the admissions representative to the name Plaintiff. These unmentioned facts are the "who, what, where, when, and how" of the fraud alleged by Plaintiffs. Plaintiffs have failed to plead their MMPA fraud claims with particularity; thus, they have failed to comply with Rule 9(b)'s heightened pleading requirements.

Thus, contrary to Ravencamp's contention, federal courts in Missouri have routinely rejected fraud claims, like Ravencamp's, where plaintiff has failed to allege the details necessary for defendant to respond and mount a defense.[4]

Ravencamp's complaint is similarly deficient, and, despite his arguments to the contrary, Menards still does not know (1) what product(s) he bought; (2) how much he paid for the product(s); (3) when precisely he bought such product(s); (4) what specific advertisements he claims were deceptive; (5) how he learned about the terms of the 11% rebate sale; (6) why and how he was injured; and (7) whether he mailed in the rebate receipt and form to obtain his merchandise credit check. Ravencamp has not satisfied Rule 9(b).

---

[4] *See Khaliki v. Helzberg Diamond Shops, Inc.*, 2011 WL 1326660 (W.D. Mo. Apr. 6, 2011), at *4 (holding that "general allegations that Helzberg's 'brochures' and 'in store sales pitches' contained the misrepresentations fall short of the Rule 9(b) standard"); *Are v. JYL Dairy Partners, LLC*, 2012 WL 12895852, at *6 (W.D. Mo. Mar. 20, 2012) (holding that "[w]hen a complaint fails to identify such things as who engaged in the wrongful acts and when these acts occurred, defendants are not able to adequately respond"); *Budach v. NIBCO, Inc.*, 2015 WL 3853298, at *7-8 (W.D. Mo. June 22, 2015) (dismissing plaintiff's complaint because plaintiff failed to allege with specificity the time and place of the conduct, the content omitted, the identity of the person who omitted it, and what was obtained or given up thereby); *Stephens v. Arctic Cat Inc.*, 2011 WL 890686, at *8 (E.D. Mo. Mar. 14, 2011) (dismissing plaintiff's complaint because plaintiff used "only vague approximations of time, such as 'while Plaintiff was visiting New Mexico'").

**B.     Ravencamp Has Failed to State a Claim Upon Which Relief Can Be Granted**

Ravencamp concedes that to survive a motion to dismiss under Rule 12(b)(6), a complaint must allege facts sufficient to make the claim of unlawful conduct "plausible." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007). And Ravencamp does not dispute that "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]'–'that the pleader is entitled to relief.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1950 (2009) (*citing* Fed. R. Civ. P. 8(a)(2).)

The problem for Ravencamp is that his claims of unlawful conduct, regardless of theory, are implausible because each depends on the same thing – his personal definition of "rebate." Ravencamp baldly proclaims (at p. 9) that Menards' advertised "Final Price" misrepresents that the 11% rebate directly reduces the cost of merchandise purchased, because, according to Ravencamp, a rebate can only mean either an "(i) immediate discount at the point of sale or (ii) cash-equivalent reimbursement by mail."

This is a personal opinion, not a fact.

As Menards pointed out in its suggestions (*id.*, p. 17-18), the term rebate generally refers to a delayed incentive that requires consumers to make a purchase at the sale price, submit a request for a rebate amount, and wait for some period to obtain the rebate, whether in the form of cash or credit. *See e.g.*, N.Y. Gen. Bus. Law § 391-q (McKinney 2011) (providing that "the term 'rebate' shall mean an offer to provide cash, credit, or credit towards future purchases, that is offered to consumers who acquire or purchase a specified product or service and that is conditioned upon the customer submitting a request for redemption after satisfying the terms and conditions of the offer.") Even Ravencamp's FTC authority provides that "most rebates are of

the mail-in variety" and "require consumers to pay the full cost of an item at the time purchase, then to send documentation to the manufacturer or retailer to receive a rebate by mail." *See* Doc. 5, Ex. E.

Ravencamp responds (at p. 15) that the New York statutory definition is not binding on Missouri consumers and "has not been adopted by Missouri courts." This argument misses the point. The Missouri courts have not adopted ***any*** definition of rebate. And, based on Ravencamp's own suggestions, there is no commonly understood meaning of the term at all in Missouri or otherwise; it is vague and ambiguous. On the one hand, for example, Ravencamp cites to the FTC definition of rebates as requiring consumers to pay "the full cost of an item at the time of purchase." *See* Doc 1 at ¶ 12. On the other hand, Ravencamp argues in his suggestions (at p. 14) that the word "rebate," "refunds," and "discounts" all mean the same thing. *Id*., p.14. So, even Ravencamp concedes that a rebate can mean many different things and take many different forms, including a delayed incentive in the form of store credit toward future purchases.

In the absence of any applicable or controlling definition of rebate, Ravencamp has failed to state a claim that Menards' advertisements were deceptive or misleading under the MMPA. *See Kelly*, 81 F. Supp. 3d at 761-62. This is particularly true here, where Menards makes clear – in the very advertisement that Ravencamp claims is deceptive – that the 11% rebate is a mail-in rebate in the form of a store credit. *See* Doc 5 at 5-11. Contrary to Ravencamp's contention, these are contemporaneous – not subsequent – disclosures that are an integral part of Menards' advertisements. *Id*.

Nor can Ravencamp credibly argue (at p. 9) that the "overall appearance" of Menards' advertisements has a tendency to deceive, when he refuses to attach the documents from which

7

that overall appearance can be determined. Moreover, based on (1) Menards' print advertisement, which directs customers over 180 times to the terms of the 11% rebate sale, (2) the in-store signage that refers to the mail-in rebate, and (3) the rebate forms and instructions which, like the print advertisement, state that the rebate is a mail-in rebate in the form of a store credit (*see* Doc 5 at 5-14), the "overall appearance" plainly conveys that the "Final Price" is the price a consumer pays after obtaining the mail-in rebate in the form of a store credit. To be clear, nowhere does Menards represent in any of its advertisements that the customer will receive an 11% ***cash*** rebate at the time of purchase or afterwards.

*Kelly v. Cape Cod Potato Chip Co.*, which Ravencamp cites, proves Menards' point. In *Kelly*, the plaintiff alleged that the defendant's use of the term "natural" on its potato chips was false and deceptive under the MMPA. The defendant moved to dismiss because the complaint offered no plausible definition of "natural." The Court agreed finding that the term was vague and ambiguous:

> Based on the foregoing, the Court finds that Plaintiff has failed to provide a plausible or applicable definition for the term 'natural.' Further, 'where a Court can conclude as a matter of law that members of the public are not likely to be deceived by the product packaging, dismissal is appropriate.' *Pelayo,* 989 F.Supp. 2d at 978. As a result, in the absence of any plausible definition for the term "natural," Plaintiff has failed to state a claim that the use of the term was deceptive or misleading under the MMPA.

*Kelly*, 81 F. Supp. 3d at 761. The term "rebate" suffers from the same deficiency.

The plaintiff in *Kelly* also argued that defendants had repeatedly misrepresented that their potato chips contained "no preservatives." The court, however, reviewed the packaging and discovered no such representations, finding that "Plaintiff's assertions that Defendants have represented that the Chips contain 'no preservatives' are conclusory allegations that fail to state particularized facts in support of the claim for relief." 81 F. Supp. 3d at 761. As a result, the

Court held that "the Petition fails to state a claim that the labeling and marketing of the Chips constituted an unlawful practice under the MMPA." *Id*.

The holding in *Kelly* applies with full force here. Like the plaintiff in *Kelly*, Ravencamp contends that Menards represented that consumers would get a cash rebate at the time of purchase or by mail afterwards. But, nowhere does Menards make any such representation.

In addition, the defendants in *Kelly* pointed out that their labeling disclosed all of the ingredients in the potato chips, which prompted the court to conclude that "Plaintiff's assertion that she was deceived by Defendants' labeling is contradicted by the full disclosure of the challenged ingredients by Defendants." 81 F. Supp. 3d at 761-62. So, too, here, Menards fully disclosed that its rebate was a mail-in rebate in the form of a store credit and her claim should also be dismissed pursuant to Rule 12(b)(6).

Finally, Ravencamp's MMPA claim fails for another reason – he is unable to plead facts sufficient to demonstrate pecuniary loss. In conclusory fashion, Ravencamp argues (at p. 6) that because the 11% rebate offered store credit rather than cash, he received something worth less than represented. The facts alleged in the complaint, however, do not support Ravencamp's contention. In order for Ravencamp's contention to be true, he would need to affirmatively plead that he intends to never shop at a Menards store in the future. Indeed, if he did, Ravencamp's in-store credit would be worth its cash equivalent.

Ravencamp presumably intends to seek injunctive relief in this case requiring Menards to change the language used in its 11% rebate advertisements. To do so, a plaintiff must show that he/she is likely to suffer some future injury. *See Kelly*, 81 F. Supp. 3d at 762. The only way that Ravencamp could suffer future injury at the hands of Menards based on its advertisements is, of course, if Ravencamp intended to shop again at a Menards store.

Ravencamp cannot have it both ways. Either he must forego all injunctive relief on behalf of himself and his proposed class, or he cannot show that he has suffered an ascertainable loss due to Menards' alleged misrepresentations. Ravencamp's MMPA claim should be dismissed with prejudice pursuant to Rule 12(b)(6) due to his failure to allege facts that demonstrate that he suffered a pecuniary loss. *See Grawitch v. Charter Commc'ns, Inc.*, 750 F.3d 956, 960 (8th Cir. 2014) (dismissing MMPA claim under Rule 12(b)(6) because the plaintiff could not show that the value of the service received was less than what was paid for by the plaintiff).

## **CONCLUSION**

For the forgoing reasons and those set forth in its suggestions, Menards respectfully requests that the Court dismiss Ravencamp's complaint pursuant to Federal Rules of Civil Procedure 9(b) and/or 12(b)(6).

Dated this 15th day of March, 2018.

                                                  Respectfully submitted,

                                                  SPENCER FANE LLP

                                            By: /s/ Thomas Hiatt
                                               Bryant T. Lamer, Mo. 57355
                                               Thomas Hiatt, Mo. 68134
                                               1000 Walnut Street, Suite 1400
                                               Kansas City, Missouri 64106
                                               Tel.   (816) 474-8100
                                               Fax   (816) 474-3216
                                               blamer@spencerfane.com
                                               thiatt@spencerfane.com

FREEBORN & PETERS LLP

Brian P. Norton,
*Pro Hac Vice Application Pending*
Andrew C. Nordahl
*Pro Hac Vice Application Pending*
311 South Wacker Dr., Suite 3000
Chicago, Ill. 60606
Tel.   (312) 360-6000
Fax    (312) 360-6520
bnorton@freeborn.com
anordahl@freeborn.com

*Attorneys for Defendant Menard, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing document was filed electronically with the United States District Court for the Western District of Missouri, this 15th day of February, 2018, which will automatically transmit a copy to all those entitled to receive notice.

/s/ Thomas Hiatt
*Attorney for Defendant*